## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 21-CV-60146-RAR

**LUIS DOMINGUEZ**,

     Plaintiff,

v.

**ALAN J. SASSON, ESQ.**,

     Defendant.

_____/

### <u>ORDER DENYING DEFENDANT'S MOTION TO DISMISS</u>

**THIS CAUSE** comes before the Court on Defendant's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6) [ECF No. 25] ("Motion"), filed on February 21, 2022.  Plaintiff filed a Response in Opposition [ECF No. 26] ("Response"), to which Defendant filed a Reply [ECF No. 32].  The Court has carefully reviewed the Complaint [ECF No. 1], the parties' submissions, the record, and applicable law and is otherwise fully advised.  For the reasons set forth below, it is hereby

**ORDERED AND ADJUDGED** that the Motion is **DENIED**.

### <u>BACKGROUND</u>

On August 19, 2020, Plaintiff, a citizen of Florida, entered into an agreement with Atlantic One Properties of Florida, LLC, a Florida limited liability company ("Purchaser"), to sell his membership interest in Atlantic Residences, LLC, a Florida limited liability company ("Agreement").  *See* Compl. ¶¶ 2, 4, 7.  On September 29, 2020, Purchaser terminated the Agreement because it was unable to perform its obligations on time.  *See id.* ¶ 12, Ex. 3 at 10.[1]

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.  However, a brief explanation of the record is helpful for the sake of clarity.  The first

Plaintiff and Purchaser later reinstated the Agreement ("First Reinstatement"), and Purchaser again exercised its termination right on October 16, 2020. *See id.* ¶ 13, Ex. 3 at 10. Finally, on November 18, 2020, Plaintiff and Purchaser agreed to reinstate the Agreement "in its entirety, as amended herein" ("Second Reinstatement"). *See id.* ¶ 16, Ex. 3 at 11. Defendant, a citizen of New York, was the escrow agent and a signatory to the Second Reinstatement. *See id.* ¶¶ 3, 17, Ex. 3 at 11. The Agreement and Second Reinstatement are discussed in further detail below.

## I.   The Agreement

The Agreement, included as Exhibit A to the Second Reinstatement, *see* Compl. Ex. 3 at 10, required the initial escrow agent, Barry D. Lapides, Esq., and the second escrow agent, Francis R. Gill, Esq., to take certain actions "in accordance with a separate Escrow Agreement, and pursuant to this Agreement." *Id.* Ex. 3 at 17 Agreement § 2.02(a)(b). The Agreement contains a jurisdictional provision entitled "Submission to Jurisdiction[,]" which requires that "[a]ny legal suit, action, or proceeding arising out of or based upon this Agreement or the transactions contemplated hereby" be brought in federal or state court in Florida and that "each Party irrevocably submit[] to the exclusive jurisdiction of such courts." *Id.* Ex. 3 at 36 Agreement § 9.12.

The signature page of the Agreement contains a notation at the bottom indicating it is the "Signature Page to Agreement for Sale of Membership Interest." *Id.* Ex. 3 at 38. The top of the signature page reads "IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly

page of Exhibit 3 to the Complaint is titled Extension Agreement and dated December 16, 2020 ("Extension Agreement"). *See* Compl. Ex 3 at 1. Plaintiff and Purchaser entered into the Extension Agreement because "Purchaser admitted to [Plaintiff] that Purchaser is unable to close" by December 16, 2020, which was the date required under the Second Reinstatement, defined above. *Id.* Exhibit A of the Extension Agreement is the Second Reinstatement. *See id.* at 9. The Second Reinstatement also contains an Exhibit A, which is the Agreement, defined above. *See id.* at 15.

authorized" and is signed by the Purchaser and Seller (Plaintiff). *Id.* Mr. A. Paul Shapansky ("Shapansky"), President and CEO of Atlantic One Properties, LLC signed on behalf of Purchaser. *Id.* The next page is another signature page entitled "Limited Joinder," which is signed by two individuals and two entities, indicating that each "join in the execution of this Agreement solely for the specific purposes set forth in Section 5.04 [the Brokers section of the Agreement] and not otherwise." *Id.* Ex. 3 at 39. The signatories of the Limited Joinder include, among others, Shapansky, as an individual, and Shapansky, as President and Managing Director of Coral Financial, LLC. *See id.*

## II. The Second Reinstatement

The Second Reinstatement reinstates the Agreement "in its entirety, as amended herein." Compl. Ex. 3 at 11 Second Reinstatement § 1. Two fees are relevant under the Second Reinstatement. *See id.* Ex. 3 at 11 Second Reinstatement §§ 2, 3. First, Purchaser agreed that it owed Plaintiff a $100,000 extension fee. *See id.* Ex. 3 at 11 Second Reinstatement § 2. Second, Purchaser agreed to deliver a $725,000 deposit to Defendant, as the escrow agent. *See id.* Ex. 3 at 11 Second Reinstatement § 3. Defendant was required to hold both the extension fee and the deposit and "deliver to the [Plaintiff] a standard escrow confirmation letter confirming the receipt of the Deposit and the Extension Fee, both to be held in accordance with the terms and conditions of the Agreement." *Id.* Ex. 3 at 11 Second Reinstatement § 3. Defendant was obligated to pay the Extension Fee of $100,000 to Plaintiff "no later than December 16, 2020 (but if the Agreement is closed on or before said date, then the Extension Fee shall be released to Seller concurrently with the closing of the transactions contemplated under the Agreement[)]." *Id.* Ex. 3 at 11 Second Reinstatement § 4. Section 5 is entitled "Escrow Matters" and provides as follows:

> Upon Escrow Agent's receipt of consistent written instructions from both Seller and Purchaser, or their respective counsel, Escrow Agent will disburse the funds in

accordance with such instructions.  Such instructions may be given in duplicate counterparts and delivered via electronic mail.

Escrow Agent will be entitled to rely upon the instructions and other matters covered thereby, and will not be required to investigate the authority of the person executing and delivering such instructions, or otherwise verify the accuracy of the statement or information presented therein.

Escrow Agent will not be accountable for any incidental benefit, which may be attributable to the funds.  Escrow Agent will not owe a fiduciary responsibility to Purchaser and Seller, and will be a depository only and not liable for any losses, costs or damages incurred in performing its responsibilities hereunder unless such losses, costs or damages arise out of the willful default or gross negligence of Escrow Agent or their agents.  Furthermore, and in no way limiting the forgoing sentence, Escrow Agent will not be liable for any loss or damage resulting from the following:

    a.   Any default, error, action, or omission of any other party;

    b.   The expiration of any time limit unless such time limit was known to Escrow Agent and such loss is solely caused by failure of Escrow Agent to proceed in its ordinary course of business;

    c.   Any loss or impairment of funds while on deposit with a federally-insured bank, resulting from failure, insolvency or suspension of such bank; and,

    d.   Escrow Agent's compliance with any and all legal process, writs, orders, judgments, and decrees of any court, whether issued with or without jurisdiction and whether or not subsequently vacated, modified, set aside or reversed.

In the event of a dispute hereunder between Seller and Purchaser (or their successors or assigns), Escrow Agent will have the right, exercisable in their sole discretion, to resign by giving written notice to Seller and Purchaser, specifying a date on which such resignation will take effect, which will be no earlier than five (5) business days after the delivery of such notice.  Promptly upon receipt of such notice, Seller and Purchaser will appoint a mutually acceptable successor escrow agent.  Upon delivery by the successor escrow agent to Seller, Purchaser, and Escrow Agent of a written instrument accepting such appointment, the successor escrow agent will succeed to all the rights and duties of Escrow Agent and the Escrowed Funds hereunder.  If a successor escrow agent is not appointed by the expiration of such five (5) business day period, Escrow Agent will have the right, exercisable in its sole discretion, to be discharged by tendering unto the registry or custody of any court of competent jurisdiction the Escrowed Funds, together with any such legal pleadings as it deems appropriate.  In such an event, Escrow Agent

will have the right to charge the Purchaser an administrative fee. Purchaser will indemnify and hold harmless Escrow Agent for all of its expenses, costs and reasonable attorneys' fees incurred in connection with such interpleader action. Escrow Agent will have the right to charge the Purchaser for any unpaid fees and any costs it has incurred for overnight delivery charges or wire transfer fees.

The terms and provisions herein are for the benefit of Seller, Purchaser, and Escrow Agent and their respective successors and assigns only. Nothing contained herein will be deemed or construed to inure to the benefit of any other person or party, it being the express intent of Seller, Purchaser, and Escrow Agent that no such person or party will be entitled to any of the benefits hereunder, except as expressly provided herein.

*Id.* Ex. 3 at 12–13. The last sentence before the signature page, reads "As modified hereby all the terms of the Agreement are hereby ratified and confirmed and shall continue in full force and effect." *Id.* Ex. 3 at 13 Second Reinstatement § 7. At the top of the signature page, it reads "IN WITNESS WHEREOF, the parties hereto have executed this [Second] Reinstatement as of the date and year hereinabove written." *Id.* Ex. 3 at 14. The signature page includes Seller (Plaintiff), Purchaser, and Escrow Agent (Defendant). *Id.*

### III. The Joint Escrow Instructions Letter

As required under the Second Reinstatement, Defendant held $825,000 for Purchaser in his firm's Attorney IOLA Trust account. *See* Compl. ¶ 18, Ex. 4 at 1. On December 28, 2020, Plaintiff and Purchaser sent a letter to Defendant ("Joint Escrow Instructions Letter") directing him to "promptly disburse (but in no event less than one (1) business day after the receipt of this Joint Escrow Instruction[s] Letter) the US$825,000.00 in your firm's Attorney IOLTA Trust account to the Seller pursuant to the wiring instructions attached hereto as Exhibit A." *See id.* ¶ 20, Ex. 5 at 1. The Joint Escrow Instructions Letter is signed by Shapansky on behalf of Purchaser. *See id.* Ex. 5 at 2. Defendant, however, did not disburse the funds. *See id.* ¶¶ 27, 34.

Defendant has provided two declarations in support of his Motion, his own declaration ("Sasson Declaration") [ECF No. 25-8] and one from his counsel, Aaron Twersky ("Twersky

Declaration") [ECF No. 25-1] (collectively the "Declarations"). The jurisdictional allegations, which are contained in the Sasson Declaration, comport with those in the Complaint. *See generally* Sasson Decl.[2]

### IV. Procedural History

Plaintiff filed his Complaint on January 21, 2021, asserting two counts. In the first count, Plaintiff alleges that Defendant breached the escrow agreement under the Second Reinstatement. In the second count, Plaintiff alleges that Defendant breached his fiduciary duty, which existed because of the escrow relationship between Defendant, Plaintiff, and Purchaser. On March 4, 2021, the Court administratively closed the case and ordered the parties to conduct an informal settlement conference based on Defendant's representation that "[t]he parties are currently exploring settlement options and hope to resolve this matter without further intervention by the Court." *See* [ECF No. 9]. On January 13, 2022, the case was reopened and returned to the Court's active docket because the parties had not resolved their dispute. *See* [ECF No. 16].

On February 21, 2022, Defendant filed the Motion, seeking dismissal on several grounds. First, Defendant argues the case must be dismissed for lack of personal jurisdiction. *See* Mot. at

---

[2] The Declarations indicate that prior to receiving the Joint Escrow Instructions Letter, on December 21, 2022, Shapansky sent an email to David Tauzowicz indicating that "under no circumstances" should Defendant release the escrow deposit. *See* Twersky Decl. ¶ 6; Sasson Decl. ¶ 9; [ECF No. 25-6]. The email signature line reads: "Paul Shapansky, Managing Director Coral Financial LLC." [ECF No. 25-6]. The Declarations also indicate that after receiving the Joint Escrow Instructions Letter, on December 30, 2020, Shapanky's partners' counsel sent a letter to Defendant informing him that Shapansky had no authority to request the release of the $825,000.00 held in escrow without his partners' written consent. *See* Twersky Decl. ¶ 7; Sasson Decl. ¶ 11; [ECF No. 25-7]. However, none of these additional facts bear any weight on personal jurisdiction, and, accordingly, will not be considered by the Court. *Cf., e.g.*, *Mendoza v. Disc. C.V. Joint Rack & Pinion Rebuilding, Inc.*, No. 13-24081-CIV, 2014 WL 979065, at *2 (S.D. Fla. Mar. 13, 2014) ("[T]he Court may only look at the four corners of the Complaint when ruling on a motion to dismiss and may not consider other documents filed in response."); *Calmet v. Duo Rest. Grp., Inc.*, No. 06-21960-CIV, 2007 WL 9706451, at *1 (S.D. Fla. Apr. 19, 2007) ("In ruling on a motion to dismiss, the Court is constrained to review the allegations as contained within the four corners of the complaint and may not consider matters outside the pleading without converting the defendant's motion into one for summary judgment.").

10–18.  Defendant further contends this Court is an improper venue for this case.  *See id.* at 18–

20.  Finally, Defendant contends that both counts of the Complaint should be dismissed for failure

to state a claim.  *See id.* at 20–23.

## LEGAL STANDARD

### I.   Motion to Dismiss for Lack of Personal Jurisdiction

To determine whether personal jurisdiction exists, a federal court sitting in diversity

undertakes a two-step inquiry: "the exercise of jurisdiction must (1) be appropriate under the state

long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the

United States Constitution."  *Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.*, 593 F.3d

1249, 1257–58 (11th Cir. 2010).

"Where a district court does not conduct an evidentiary hearing on the question, the burden

is on the Plaintiff to establish a prima facie case of personal jurisdiction over a nonresident

defendant."  *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000) (citing

*Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)).  Plaintiffs meet that burden if they present

enough evidence to withstand a motion for directed verdict.  *Id.*  The Court must accept allegations

as true, to the extent that they are uncontroverted by the defendants' affidavits and depositions,

and must construe all reasonable inferences in favor of the plaintiffs.  *Id.*

However, a challenge to personal jurisdiction is abandoned when a defendant fails to raise

the issue in either a responsive pleading or Rule 12 motion.  Fed. R. Civ. P. 12(h).  "Federal Rule

of Civil Procedure 12(h) states unequivocally that a claim based on a 'lack of jurisdiction over the

person . . . is waived . . . if it is neither made by motion under this rule nor included in a responsive

pleading or an amendment therefore permitted by Rule 15(a). . . .'"  *Stubbs v. Wyndham Nassau*

*Resort & Crystal Palace Casino*, 447 F.3d 1357, 1364 (11th Cir. 2006) (quoting Fed. R. Civ. P.

12(h)).  Personal jurisdiction may also be waived "if that defendant substantially participates in the litigation without actively pursuing its Rule 12(b)(2) defense." *Matthews v. Brookstone Stores, Inc.*, 431 F. Supp. 2d 1219, 1223 (S.D. Ala. 2006) (citations omitted); *see, e.g., Rates Tech. Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1309 (Fed. Cir. 2005) (noting that "a party may consent to personal jurisdiction by extensively participating in the litigation without timely seeking dismissal"); *PaineWebber Inc. v. Chase Manhattan Priv. Bank (Switz.)*, 260 F.3d 453, 459 (5th Cir. 2001) (acknowledging the "well-established rule that parties who choose to litigate actively on the merits thereby surrender any jurisdictional objections"); *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 60 (2nd Cir. 1999) (observing that "delay in challenging personal jurisdiction by motion to dismiss may result in waiver") (citations omitted); *Yeldell v. Tutt*, 913 F.2d 533, 539 (8th Cir. 1990) (acknowledging defendant "literally complied with Rule 12(h) by including the jurisdictional issue in their answer" but finding waiver of personal jurisdiction because defendant failed to "comply with the spirit of the rule, which is 'to expedite and simplify proceedings in the Federal Courts'") (citations omitted).

## II.  Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and plaintiffs should receive the benefit of all favorable inferences that can be drawn from the facts alleged. *Iqbal*, 556 U.S. at 678; *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).  A court considering a Rule 12(b)(6) motion generally is limited to the facts contained in the complaint and attached exhibits,

but a court may also consider documents referred to in the complaint that are central to the claim and whose authenticity is undisputed.  *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).  "Dismissal pursuant to Rule 12(b)(6) is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (citation omitted).

## ANALYSIS

In his Motion, Defendant raises several arguments in favor of dismissal.  While a federal court "generally may not rule on the merits of a case without first determining that it has jurisdiction over . . . the parties (personal jurisdiction)[,]" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (citation omitted), "[i]n Florida, before a court addresses the question of whether [] jurisdiction exists under the long-arm statute, the court must determine 'whether the allegations of the complaint state a cause of action.'"  *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010) (citing *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002); *8100 R.R. Ave. Realty Tr. v. R.W. Tansill Constr. Co.*, 638 So. 2d 149, 151 (Fla. 4th DCA 1994)).  Accordingly, the Court first determines whether Plaintiff has stated a claim for the two counts alleged in the Complaint.

### I.   Breach of Escrow Agreement (Count I)

"The elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages."  *Beck v. Lazard Freres & Co.*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)).  "Contract interpretation principles under Florida law require [courts] to look first at the words used on the face of the contract to determine whether that contract is ambiguous.  It is well settled that the actual language used in the contract is the best evidence of the intent of the parties and, thus, the plain meaning of that

language controls." *Rose v. M/V "Gulf Stream Falcon"*, 186 F.3d 1345, 1350 (11th Cir. 1999) (internal citations omitted); *see also GE Med. Sys. S.C.S. v. SYMX Healthcare Corp.*, No. 18-20922, 2021 WL 821433, at *11 (S.D. Fla. Mar. 4, 2021) (noting that it is well settled that "[w]hen interpreting a contract, the court must first examine the plain language of the contract for evidence of the parties' intent").

Defendant's first argument, that he was not a party to the Second Reinstatement, targets the first element—the existence of a valid contract. *See* Mot. at 21. The Court finds this argument to be without merit. Defendant signed the Second Reinstatement and, despite Defendant's assertions to the contrary, *see id.* ("The only portion of the Second [] Reinstatement that Sasson had any obligations under was Section 5, which outlines the terms of the escrow."), the Second Reinstatement is replete with references to Defendant's obligations as the escrow agent. The Second Reinstatement contains only seven sections, and three of those sections explicitly reference Defendant's obligations. *See* Compl. Ex. 3 at 11–13 Second Reinstatement §§ 3, 4, 5. In addition to extending the Agreement between Plaintiff and Purchaser, the Second Reinstatement is also an escrow agreement, whereby Defendant established "a new legal relationship to the principal parties." *Oginsky v. Paragon Props. of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1376 (S.D. Fla. 2011) (citing *United Am. Bank of Central Fla. v. Seligman*, 599 So. 2d 1014, 1016 (Fla. 5th DCA 1992)).

Indeed, the plain language of the Second Reinstatement removes any doubt that Defendant was a party:

> The terms and provisions herein are for the benefit of Seller, Purchaser, and Escrow Agent and their respective successors and assigns only. Nothing contained herein will be deemed or construed to inure to the benefit of any other person or party, it being the express intent of Seller, Purchaser, and Escrow Agent that no such person or party will be entitled to any of the benefits hereunder, except as expressly provided herein.

Compl. Ex. 3 at 12–13 Second Reinstatement § 5.  Defendant's argument that this language indicates Section 5 of the Second Reinstatement was meant to be self-contained, *see* Mot. at 8–9, is not convincing.  The "words used on the face of the contract," *Rose*, 186 F.3d at 1350 (citations omitted), do not limit Defendant's involvement to Section 5 of the Second Reinstatement; instead, the Second Reinstatement expressly states that it is "for the benefit of Seller, Purchaser, and Escrow Agent." Compl. Ex. 3 at 12–13 Second Reinstatement § 5.  In the Agreement, which was attached as Exhibit A to the Second Reinstatement, the parties explicitly limited the involvement of various individuals.  First, the two escrow agents involved in the Agreement were not signatories and participated "in accordance with a separate Escrow Agreement, and pursuant to this Agreement." Compl. Ex. 3 at 17 Agreement § 2.02(a)(b).  Second, the Agreement contained a signature page entitled "Limited Joinder," separate from the "Signature Page to Agreement for Sale of Membership Interest," which is signed by two individuals and two entities, indicating that each "join in the execution of this Agreement solely for the specific purposes set forth in Section 5.04 [the Brokers section of the Agreement] and not otherwise." *Id.* Ex. 3 at 39.

If the parties intended Defendant's participation to be limited to Section 5, they could have, for example, used either of the two methods that had been used previously in the Agreement to so limit Defendant's involvement: (i) simply refer to Defendant and a separate escrow agreement in the Second Reinstatement and/or (ii) have a separate signature page for the Defendant indicating that he "join[s] in the execution of this [Second Reinstatement] solely for the specific purposes set forth in Section 5[] and not otherwise." Compl. Ex. 3 at 39.  Of course, the signatories to the Second Reinstatement—Plaintiff, Purchaser, and Defendant—did not do so, and the Court "draw[s] [the] reasonable inference[] from unambiguous contract language" that Defendant was a party to the Second Reinstatement. *SYMX Healthcare Corp.*, 2021 WL 821433, at *12.

Defendant next argues that there was no breach because he did not receive "consistent written instructions" as required under the Second Reinstatement to release the funds. Mot. at 22. The relevant portion of the Second Reinstatement reads as follows:

> Upon Escrow Agent's receipt of consistent written instructions from both Seller and Purchaser, or their respective counsel, Escrow Agent will disburse the funds in accordance with such instructions. Such instructions may be given in duplicate counterparts and delivered via electronic mail.

> Escrow Agent will be entitled to rely upon the instructions and other matters covered thereby, and will not be required to investigate the authority of the person executing and delivering such instructions, or otherwise verify the accuracy of the statement or information presented therein.

Compl. Ex. 3 at 12 Second Reinstatement § 5. Plaintiff has pled that consistent written instructions were provided in the Joint Escrow Instructions Letter. *See* Compl. ¶ 20, Ex. 5 at 1. The Joint Escrow Instructions Letter, signed by Plaintiff and Purchaser, directed Defendant to "promptly disburse . . . the US$825,000.00 in your firm's Attorney IOLTA Trust account to the Seller." *Id.* And, as Plaintiff correctly points out, *see* Resp. at 15–16, Defendant's arguments to the contrary go beyond the pleadings and cannot be considered at this stage of the proceedings. *See, e.g.*, *Litterdragt v. Miami-Dade Cnty.*, No. 14-24737-CV, 2016 WL 11504185, at *1 (S.D. Fla. Jan. 25, 2016) ("This would require the Court to consider evidence outside of the pleadings and is inappropriate at the motion to dismiss stage."). Accordingly, Plaintiff's allegations suffice to state a claim for breach of contract.

## II.    Breach of Fiduciary Duty (Count II)

"To state a claim for breach of common law fiduciary duty Plaintiff must allege '(1) the existence of a fiduciary duty; (2) its breach; and (3) damages proximately caused by the breach.'" *Vallina v. Mansiana Ocean Residences LLC*, No. 10-CV-21506, 2011 WL 11674441, at *5 (S.D. Fla. June 17, 2011) (citing *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002)). "Under Florida

law, an escrow holder is a fiduciary of the parties to the escrow agreement." *Frankel v. St.*, No. 07-60948-CIV, 2007 WL 9700557, at *3 (S.D. Fla. Dec. 7, 2007) (citing *Decarlo v. Griffen*, 827 So. 2d 348, 351 (Fla. 4th DCA 2002)); *see also Oginsky*, 784 F. Supp. 2d at 1375 ("It is well-settled that one who undertakes to act as an escrow holder assumes fiduciary duties as a matter of law . . . ."). "[A]n escrow agent may be liable for damages for breach of the fiduciary duty owed to the parties to the escrow." *Solnes v. Wallis & Wallis, P.A.*, No. 13-61225-CIV, 2013 WL 3771341, at *7 (S.D. Fla. July 18, 2013) (citing *Armbruster v. Alvin*, 437 So. 2d 725, 726 (Fla. 3d DCA 1983)).

Plaintiff has alleged that Defendant breached his fiduciary duties "[b]y ignoring the Joint Escrow Instruction[s] Letter," Compl. ¶ 35, and not delivering the escrow funds as required under the Second Reinstatement. *See id.* at 25. "Handling of escrowed funds in a manner contrary to the escrow agreement is a breach of an escrow holder's fiduciary duties." *Oginsky*, 784 F. Supp. 2d at 1376 (citing *Fla. Bar v. Joy*, 679 So. 2d 1165, 1167 (Fla. 1996)) (collecting cases). Defendant disputes the existence of the first element, however, arguing that, under the Second Reinstatement, he did not owe a fiduciary duty to Plaintiff or Purchaser. *See* Mot. at 18–19 (quoting Compl. Ex. 3 at 12 Second Reinstatement § 5) ("***Escrow Agent will not owe a fiduciary responsibility to Purchaser [Atlantic One] and Seller [Plaintiff]***, and will be a depository only and not liable for any losses, costs or damages incurred in performing its responsibilities hereunder unless such losses, costs or damages arise out of the willful default or gross negligence of Escrow Agent or their agents."). Plaintiff counters that interpreting this provision "as disclaiming ***any*** fiduciary duty to Dominguez guts the intent underlying the reason for Sasson to serve as an escrow agent." Resp. at 18.

The Court agrees.  Indeed, the very statement relied upon by Defendant as purportedly removing any fiduciary duty, goes on to read "unless such losses, costs or damages arise out of the willful default or gross negligence of Escrow Agent or their agents."  Compl. Ex. 3 at 12 Second Reinstatement § 5.  And, beyond the requirements of Section 5, the Second Reinstatement required Defendant to complete other acts that were of a fiduciary nature as well.  *See, e.g.*, *id.* Ex. 3 at 11 Second Reinstatement § 3 (requiring Defendant to hold both the extension fee and the deposit and "deliver to the [Plaintiff] a standard escrow confirmation letter confirming the receipt of the Deposit and the Extension Fee, both to be held in accordance with the terms and conditions of the Agreement.").  Accordingly, construing the Complaint in the light most favorable to Plaintiff, Plaintiff has adequately alleged a claim for breach of fiduciary duty against Defendant.

### III.   Personal Jurisdiction

Before turning to Defendant's argument that he is not subject to personal jurisdiction in Florida, the Court will first address the issue of waiver.  Plaintiff contends that Defendant has waived any objections he may have to personal jurisdiction by (i) actively participating in this litigation and (ii) signing the Second Reinstatement, which incorporated the Agreement containing a forum selection clause providing jurisdiction to Florida's courts.  *See* Resp. at 6–9.

As this Court noted in *Salinero v. Johnson & Johnson, Inc.*, while the Eleventh Circuit has not yet spoken on what actions indicate a party has waived its objections to personal jurisdiction, a "review of persuasive authority from other jurisdictions discloses two clear organizing principles for the 'waiver-by-conduct' analysis."  No. 18-CIV-23643-RAR, 2019 WL 2410076, at *3 (S.D. Fla. June 7, 2019) (citing *Matthews v. Brookstone Stores, Inc.*, 431 F. Supp. 2d 1219, 1224 (S.D. Ala. 2006)).  First, courts are more likely to find waiver if a longer amount of time has passed "between service of process and defendant's motion to dismiss for lack of personal jurisdiction."

*Id.* (citation omitted).  Second, waiver is more likely to be found where a defendant has been "more active" in litigating a case.  *Id.* (citations omitted).

Under both prongs of the analysis, the Court finds that none of Defendant's conduct indicates he has waived his right to object to personal jurisdiction.  This case was filed on January 21, 2021.  *See* Compl.  Less than two months later, on March 4, 2021, the Court administratively closed the case and ordered the parties to conduct an informal settlement conference.  *See* [ECF No. 9].  On January 13, 2022, the case was reopened and returned to the Court's active docket because the parties had not resolved their dispute.  *See* [ECF No. 16].  Approximately one month later, on February 21, 2022, Defendant filed the Motion.  *See* Mot.  In other words, setting aside the time during which this case was administratively closed, Defendant took three months to file his Motion.  This is not nearly enough for a finding of waiver based on elapsed time.  *See, e.g.*, *Dawson v. Bruce Teleky, Inc.*, No. 618CV1908ORL37LRH, 2019 WL 13066868, at *3 (M.D. Fla. Nov. 19, 2019) (eight-month delay did not constitute waiver); *McCarthy v. Yamaha Motor Mfg. Corp.*, 994 F. Supp. 2d 1318, 1322 (N.D. Ga. 2014) (seven-month delay did not constitute waiver); *Brokerwood Int'l (U.S.), Inc. v. Cuisine Crotone, Inc.*, 104 F. App'x 376, 381 (5th Cir. 2004) (seven-month delay did not constitute waiver).

Nor does Defendant's litigation activity indicate a waiver of his right to object to personal jurisdiction.  Substantial participation is necessary for courts to find a defendant has waived personal jurisdiction.  *See, e.g.*, *Salinero*, 2019 WL 2410076, at *5 (finding waiver where defendant participated in a case management conference, stipulated to a motion for protective order, participated in discovery including noticing seven depositions, filed an expedited motion under Rule 35(a), and set four discovery hearings); *Schwartz v. M/V GULF SUPPLIER*, 116 F. Supp. 2d 831, 835 (S.D. Tex. 2000) (finding waiver where defendant "complied with the

requirements of Rule 12(h), . . . [but] violated the spirit of the rule by filing its Motion to Dismiss

on the eve of trial" following "extensive pretrial activity"); *Cont'l Bank, N.A. v. Meyer*, 10 F.3d

1293, 1297 (7th Cir. 1993) (finding waiver where defendants participated in lengthy discovery,

filed various motions, and opposed a number of motions).   There is simply no evidence of

substantial participation on behalf of Defendant.[3]

Plaintiff also argues that Defendant has waived his objections to personal jurisdiction by

consenting to the forum selection clause in the Agreement.  *See* Resp. at 8.  "A party may waive

personal jurisdiction and consent to jurisdiction in a specific forum." *Schuster v. Carnival Corp.*,

No. 10-21879-CIV, 2011 WL 13220428, at *11 (S.D. Fla. Feb. 3, 2011) (citing *Ins. Corp. of Ir.,*

*Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982)); *Oldfield v. Pueblo De Bahia*

*Lora, S.A.*, 558 F.3d 1210, 1218 n.21 (11th Cir. 2009).  Parties may "confer jurisdiction on the

courts of Florida by contract alone if certain requirements are met." *Steffan v. Carnival Corp.*, No.

16-25295-CIV, 2017 WL 4182203, at *4 (S.D. Fla. Aug. 1, 2017) (citing *Corp. Creations Enters.*

*v. Brian R. Fons Att'y at L. P.C.*, No. 4D16-927, 2017 WL 2665069, at *3 (Fla. 4th DCA June 21,

2017)); *see also* Fla. Stat. § 48.193(1)(a)(9) (2016).  "To properly confer jurisdiction, a contract

must," among other requirements, "include a provision whereby the non-resident agrees to submit

to the jurisdiction of the courts of Florida." *Steffan*, 2017 WL 4182203, at *4 (citation omitted).

Plaintiff argues that because the Second Reinstatement incorporated the Agreement, which

includes a provision providing for jurisdiction over disputes in Florida, Defendant has already

consented to jurisdiction and venue before this Court.  *See* Resp. at 8–9.  "Under Florida law,

---

[3] Plaintiff's argument that filing a notice of appearance supports a finding of active participation, *see* Resp.
at 7, is incorrect.  *See Pouyeh v. Pub. Health Tr. of Jackson Health Sys.*, No. 16-23582-CIV, 2017 WL
4295924, at *1 (S.D. Fla. May 12, 2017), *aff'd*, 718 F. App'x 786 (11th Cir. 2017) ("Federal courts have
held that a notice of appearance does not waive Rule 12(b)(2)-(5) defenses.") (citing *Coe v. Philips Oral*
*Healthcare Inc.*, No. C13–518–MJP, 2014 WL 585858, at *2 (W.D. Wash. Feb. 14, 2014)).

where a written contract refers to and sufficiently describes another document, that other document or so much of it as is referred to, may be regarded as part of the contract and therefore is properly considered in its interpretation." *Dependable Component Supply Corp. v. Lear Corp.*, No. 06-61105-CIV, 2007 WL 9698314, at *1 (S.D. Fla. May 14, 2007) (citing *Jenkins v. Eckerd Corp.*, 913 So. 2d 43, 51 (Fla. 1st DCA 2005)).  "The doctrine of incorporation requires that there must be some expression in the incorporating document . . . of an intention to be bound by the collateral document." *Affinity Internet, Inc. v. Consol. Credit Counseling Servs., Inc.*, 920 So. 2d 1286, 1288 (Fla. 4th DCA 2006) (internal citation and quotation omitted).  However, "[a] mere reference to another document is not sufficient to incorporate that other document into a contract, particularly where the incorporating document makes no specific reference that it is 'subject to' the collateral document."  *Id.* (internal quotation omitted).

As to Purchaser and Plaintiff, the Court does not doubt that the Second Reinstatement reincorporated the Agreement in its entirety.  The recitals make that abundantly clear: "[w]hereas, Seller and Purchaser now desire to reinstate the Agreement in its entirety and amend the Agreement on the terms set forth herein."  Compl. Ex. 3 at 10 Second Reinstatement.  Nothing in the Second Reinstatement, however, indicates that *Defendant* agreed to be bound by the forum selection clause in the Agreement.  While Defendant, as the escrow agent, had to be aware of the Agreement as the underlying contract for which he was serving as the escrow agent, that does not mean Defendant agreed to be bound by all of the terms that the parties agreed to in the Agreement. That would be an illogical result.  While the Agreement is "reinstated in its entirety, as amended herein," Compl. Ex. 3 at 10 Second Reinstatement § 1, nothing in the Agreement bound the escrow agents to the forum selection or venue provisions either.  Thus, the Court determines that there is

no such provision, as required under Florida law, whereby Defendant agreed to submit to the jurisdiction of Florida courts. *See Steffan*, 2017 WL 4182203, at *4.

Accordingly, the Court turns to the Florida long-arm statute.

### A. Long-Arm Statute

Florida's long-arm statute, section 48.193, provides two ways in which a defendant may be subject to the jurisdiction of Florida courts:

> First, a defendant is subject to specific personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida—for conduct specifically enumerated in the statute . . . Second, a defendant is subject to general personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in "substantial and not isolated activity" in Florida.

*Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (internal citations and quotations omitted). Plaintiff only asserts that specific personal jurisdiction exists over Defendant, so the Court will focus its analysis on specific personal jurisdiction. Plaintiff asserts that personal jurisdiction exists under two provisions of the long-arm statute: (2) "[c]ommitting a tortious act within this state" and (7) "[b]reaching a contract in this state by failing to perform acts required by the contract to be performed in this state." *See* Resp. at 10–11 (citing Fla. Stat. § 48.193 (1)(a)(2)(7)).

The Court must first address the impact of the Declarations filed in support of the Motion. While Plaintiff did not produce any evidence to rebut the Declarations, Defendant does not, nor could he successfully, argue that it was necessary to do so. The "specific factual declarations within the affiant's personal knowledge" that were provided in the Declarations comported with the jurisdictional allegations of the Complaint. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999). Accordingly, since any jurisdictional statements in the Declarations "do not contradict Plaintiff's pleadings, we accept the allegations stated in the complaint as true for

purposes of resolving the jurisdictional issue under the requirements of the Florida long-arm statute and the Due Process Clause." *Id.*

"Section 48.193(1)[(a)(2)] of the Florida Long-Arm Statute permits jurisdiction over the nonresident defendant who commits a tort outside of the state that causes injury inside the state." *Brennan v. Roman Cath. Diocese of Syracuse N.Y., Inc.*, 322 F. App'x 852, 854 (11th Cir. 2009) (citing *Posner*, 178 F.3d at 1216). "The defendant's physical presence is not required if the tort causes an injury in Florida." *Id.* (citing *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002)). Count II of the Complaint alleges that Defendant breached his fiduciary duty to Plaintiff, causing harm in Florida. *See* Compl. ¶¶ 35–36. "Thus when an out-of-state defendant commits an intentional tort against a Florida citizen, as the Plaintiff[] ha[s] alleged occurred in the instant matter, the defendant has caused the necessary Florida injury and is subject to jurisdiction here." *Kleiman v. Wright*, No. 18-CV-80176, 2018 WL 6812914, at *12 (S.D. Fla. Dec. 27, 2018).

Section 48.193(1)(a)(7) of the Florida Long-Arm Statute is satisfied when there is a "failure to pay a contractual debt where payment is to be made in Florida." *Brennan*, 322 F. App'x at 854 (citing *Posner*, 178 F.3d at 1218). Defendant became the escrow agent for Purchaser, a Florida company, and Plaintiff, a Florida citizen, under the Second Reinstatement. *See* Compl. ¶¶ 2, 4, 7, Ex. 3 Second Reinstatement. The Joint Escrow Instructions Letter required Defendant to deliver the escrow funds to Plaintiff in Florida, *see id.* ¶ 20, Ex. 5 at 1, and Defendant failed to disburse the funds to Florida. *See id.* ¶¶ 27, 34. Accordingly, Plaintiff's contract and tort claims satisfy the Florida Long-Arm Statute.

### B. Due Process

"Whether specific or general, the exercise of personal jurisdiction over a defendant must comport with due process." *Waite*, 901 F.3d at 1312. Exercising jurisdiction "comports with due

process so long as 'minimum contacts' exist between [Defendant] and Florida" and doing so would "not offend 'traditional notions of fair play and substantial justice.'"  *Posner*, 178 F.3d at 1220. The Eleventh Circuit has established a three-part due process test for specific personal jurisdiction cases:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (citations omitted).

The relatedness prong requires "'a relationship among the defendant, the forum, and the litigation [as] the essential foundation of in personum jurisdiction . . . .'"  *Id.* at 1356 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).  Here, Plaintiff's breach of contract and breach of fiduciary duty claims arise out of Defendant's contacts with Florida.  Defendant's ties to Florida all relate to his duties as the escrow agent under the Second Reinstatement.  Therefore, the relatedness requirement is satisfied.

The second prong asks whether Defendant "purposefully availed himself of the Florida forum in such a way that he could reasonably foresee being haled into a Florida court."  *Id.* at 1357.  Defendant signed the Second Reinstatement, agreeing to become the escrow agent for Plaintiff, a citizen of Florida, and Purchaser, a Florida limited liability company, where the underlying transaction was Plaintiff selling his membership interest in Atlantic Residences, LLC, a Florida limited liability company.  *See* Compl. ¶¶ 2, 4, 7, Ex. 3 at 14.  Being haled into a Florida court was reasonably foreseeable.

To determine whether the exercise of personal jurisdiction comports with "fair play and substantial justice," courts consider "(1) the burden on the defendant; (2) the forum's interest in

adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." *Mosseri*, 736 F.3d at 1358 (11th Cir. 2013) (citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008)).  Defendant has not offered any evidence to show that he would be burdened by having to litigate the case in Florida. Florida has a strong interest in hearing the case since the underlying transaction was between a citizen of Florida and a Florida limited liability company, and the interest being sold was in another Florida limited liability company.  *See Argos Glob. Partner Servs., LLC v. Ciuchini*, 446 F. Supp. 3d 1073, 1089 (S.D. Fla. 2020) ("Florida has a strong interest in adjudicating disputes involving its residents and those who do business with its residents.") (citation omitted).  Plaintiff, as a Florida citizen, has an interest in litigating the case in his chosen forum.  Further, the judiciary has an interest in efficiently resolving this dispute.  "[T]he Court sees no reason why this issue cannot be effectively and efficiently determined in [Plaintiff's] home forum, where the alleged contract was to be performed."  *Id.*  Accordingly, the assertion of jurisdiction over Defendant does not offend due process.

Finally, since the Court determines that Defendant is subject to personal jurisdiction in this district, venue here is proper.  *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 57 (2013); *Ciuchini*, 446 F. Supp. 3d at 1093.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion [ECF No. 25] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this Independence Day, the 4th day of July, 2022.

_____

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**